Filed 9/1/23  P. v. Salazar CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE SALAZAR,<br><br>Defendant and Appellant. | C096158<br><br>(Super. Ct. No. 14F01794) |

A jury found defendant Jose Salazar guilty of second degree murder for his participation in a gang fight that left one victim stabbed to death.  Defendant later filed a petition for resentencing under Penal Code section 1172.6[1] and the trial court denied the petition, finding him guilty beyond a reasonable doubt.  We shall affirm on the basis there is substantial evidence defendant aided and abetted an implied malice murder.

---

[1] Further undesignated statutory references are to the Penal Code.  Defendant petitioned for resentencing under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6 without substantive changes. (Stats. 2022, ch. 58, § 10.)

BACKGROUND

A. *Defendant's Trial*

At defendant's trial in early 2017, witnesses testified gang membership motivated a brawl between two groups. It began when a codefendant's classmate called him a derogatory name based on the codefendant's gang membership. The codefendant went home and told defendant, codefendant Sebastian Torres, and two other classmates, who were all members of the insulted gang, what happened. Defendant and Torres were described as the two older members of the group, in their early twenties. Defendant was also "significantly shorter and heavier than the other[s]," around five feet two inches tall and 200 pounds, and Torres was around five feet eight inches tall and 200 pounds.

With defendant in the passenger seat, Torres drove the group to the house where the name-calling classmate and several other teenagers were, intending to fight them. When they arrived, some of the teenagers were outside, defendant's group swore and yelled gang references, and they started fighting everyone at the house. Three people were stabbed during the fight: Shannon Gregg, Brandon Moreno, and Michael Caicedo. Witnesses testified to Torres stabbing Caicedo, but Caicedo testified it was a "[s]horter, pudgier guy" who was the "heaviest of the group." And witnesses saw Torres fighting Moreno before he was stabbed, but Moreno testified to fighting "a short, fat one." Gregg, one of the teenagers' father, came out of the house to stop the fight but was stabbed at about the same time as Moreno, though at a different location at the fight scene. Accounts varied as to who fought Gregg, but the witnesses only provided testimony indicating it was either defendant or Torres. And the only evidence of who had knives pointed to Torres and defendant. Right after Gregg yelled he had been stabbed, defendant yelled, "Let's go," the group fled in the car, and either defendant or Torres yelled out of the window they would return with bullets. Gregg eventually died from his wounds.

2

A codefendant testified to seeing defendant in the car wipe blood off his knife and defendant told him he had stabbed someone and "[d]on't say nothing." Defendant also told the same codefendant after he was arrested not to say anything as the codefendant was going to court. Defendant and Torres also fought the codefendant because he gave police a statement.

Defendant's jury, which was instructed on the natural and probable consequences doctrine for murder, found defendant guilty of second degree murder, among other charges, and found true the crimes were committed for the benefit of a criminal street gang. In 2017, defendant was sentenced to a determinate term of 11 years eight months in prison, and an indeterminate term of 15 years to life.

B. *Defendant's Petition for Resentencing*

In 2020, defendant filed a resentencing petition under section 1172.6, alleging he could not now be convicted of second degree murder based on changes to the law. The trial court issued an order to show cause and held an evidentiary hearing on April 29, 2022. The only evidence presented was the transcripts from defendant's prior trial. After counsels' arguments on whether defendant could be guilty of second degree murder under an implied malice murder theory, the trial court found: "Defendant Jose Salazar is guilty of violation of Penal Code Section 187[, subdivision] (a), second degree murder of Shannon Gregg. The petition is denied."

DISCUSSION

Defendant argues the trial court's finding lacked substantial evidence because the evidence only shows he "was involved in a melee where he was not interacting with Shannon Gregg or the person who actually stabbed him." We disagree.

A. *Legal Standards*

The natural and probable consequence doctrine is no longer a valid basis for murder liability effective January 1, 2019. (Stats. 2018, ch. 1015, § 2.) Section 1172.6 permits persons who were previously convicted of murder under the natural and probable

consequence doctrine to petition for resentencing if they "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 effective January 1, 2019." (§ 1172.6, subd. (a)(3).) After submittal of a petition providing basic information, including a declaration of eligibility, the trial court must "hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Id*., subds. (b)-(c).) "[A]fter the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence." (*Id*., subd. (d)(1).) At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law." (*Id*., subd. (d)(3).)

"[A] trial court's denial of a section 1172.6 petition is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)

Implied malice murder is a still valid legal theory to support a second degree murder conviction after the changes to sections 188 and 189 effective January 1, 2019. (*People v. Powell* (2021) 63 Cal.App.5th 689, 714.) "Murder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' [Citation.] ' "To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result,

4

rather than insignificant or merely theoretical." ' " (*People v. Reyes, supra*, 14 Cal.5th at p. 988.)

A nonperpetrator may also be guilty of implied malice murder. Notwithstanding the "elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile* (2020) 10 Cal.5th 830, 850.) As summarized by another panel of this court: "direct aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life–endangering act.[2] For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life–endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life." (*People v. Powell, supra*, 63 Cal.App.5th at pp. 713-714; *People v. Reyes, supra*, 14 Cal.5th at pp. 990-991 [quoting *Powell*].) "Factors to be considered by the trier of fact in determining 'whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime.' " (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273.)

---

[2] "The relevant act is the act that proximately causes death. [Citations.]"

5

B. *Analysis*

Even assuming there is not sufficient evidence defendant was the perpetrator of Gregg's murder, there was substantial evidence he was a direct aider and abettor of Torres's implied malice murder of Gregg. The testimony at trial indicated defendant or Torres stabbed the three victims. There was also evidence defendant committed at least one of the stabbings because defendant was seen with a bloody knife and said he had stabbed someone. And there was evidence different people stabbed Moreno and Gregg because they were stabbed about the same time but in different locations. Thus, the evidence supports either defendant stabbed Gregg, or he stabbed Moreno while Torres stabbed Gregg. Defendant does not challenge this stating, "[t]he evidence showed [defendant] stabbed Brandon Moreno and, perhaps, that he also stabbed Michael Caicedo," but asserts "there was not substantial evidence that [defendant] was involved in the stabbing of Shannon Gregg." But he need not have been directly involved; knowingly aiding Torres's act that was dangerous to human life is sufficient. Such evidence existed here.

The relevant act was Torres entering a fight with a knife to stab people. This is unquestionably a life–endangering act. And there was evidence defendant knowingly aided and abetted Torres in this act with conscious disregard for human life. Defendant and codefendant were members of the same gang, went to the house together with defendant riding in the passenger seat while Torres drove, both carried knives, and defendant joined Torres in the fight and stabbed at least one other person. Defendant also yelled for everyone to leave after Gregg yelled that he had been stabbed, and there was evidence he threatened the victims they would return with bullets. After arrests were made, defendant and Torres threatened, and ultimately beat up, a codefendant to silence him. The evidence shows defendant and Torres acted as a team in stabbing opposing fighters and trying to get away with it. That Torres was the one who may have stabbed Gregg, and defendant may not have known Torres would stab Gregg specifically, is not

6

determinative. It is instead enough there was substantial evidence defendant knowingly aided Torres in executing an act dangerous to human life in conscious disregard to that risk.

Two cases particularly support our finding here. In *People v. Vargas* (2022) 84 Cal.App.5th 943, the defendant, who was associated with a gang, egged on members of the gang to fight someone in their territory. She then told one of them to shoot the person, but the person's brother stepped between them and was shot, the shooter then shot the brother in the head and killed him; the assailants fled together. The appellate court found there was substantial evidence defendant was "inextricably involved in the events that led to the murder," she prompted the fight of the other person, prompted the shooting, and was aware the eventual victim was nearby. (*Id*. at p. 954.) Thus, the appellate court affirmed the denial of a section 1172.6 petition on the basis there was substantial evidence the defendant "acted with implied malice in aiding and abetting the murder." (*Vargas,* at p. 955.)

In *People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, the defendant got into an argument with a group and agreed to fight them later. He then recruited some others, one a known gang member, and at the fight, the gang member stabbed and killed someone. The trial court found this was not sufficient proof of implied malice and dismissed a murder charge at the preliminary hearing. (*Id*. at pp. 490-491.) The appellate court reversed, finding there was sufficient evidence of implied malice because it was likely defendant and the perpetrator had discussed whether they should be armed, and since he "travelled with him to the park, it is also reasonable to believe he knew [the perpetrator] had a knife." (*Id*. at p. 503.) This was also not "a simple fistfight" but "a show of force and threat of deadly force, complete with gang challenges." (*Ibid*.) The court noted the low threshold at that stage and found "there need only be ' " 'some rational ground for assuming the possibility that an offense has been committed and the

7

accused is guilty of it,' " ' " so it concluded there was sufficient evidence the defendant "aided or encouraged the commission of the life endangering act." (*Id*. at p. 502.)

These cases support our finding here. Like *Vargas*, the fight here was gang motivated, deadly violence was predictable, and though both defendants may not have specifically intended the particular victim to be killed, both knowingly aided the act dangerous to life in conscious disregard for life by being inextricably involved in the events leading to the murder. This case is also factually similar to *Valenzuela*, where the defendant went to the fight scene with the perpetrator who had a knife in a show of force after making gang challenges. Though the standard of review was less demanding in *Valenzuela*, it still lends support to our conclusion here that, looking at the evidence in the light most favorable to the finding, defendant, armed with a knife, knowingly aided another gang member armed with a knife in a violent and gang-motivated show of force.

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.


　　　　　　　　　　　　　/s/_____,
　　　　　　　　　　　　　WISEMAN, J.*


We concur:


　/s/_____,
MAURO, Acting P. J.


　/s/_____,
MESIWALA, J.

_____

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8